The next case is People in the State of Illinois v. Devin Adams, Ms. Zalisco. This case involves the interstate agreement on detainers. And under that statute, a defendant must be brought to trial within 180 days after he receives given notice that the prosecutor in the issuing state has issued the detainer. He has to give notice to the warden of the custodial state, the institution that he's in in the custodial state, and then the warden tells the prosecutors in the issuing state. In order to comply with his obligation, the defendant must be informed of that obligation. And that's the problem in this case. When the defendant was arrested in Kentucky, an Illinois detainer was spot, was lodged. The defendant was taken to what they call a parent institution in Rotorua Correctional Center in Kentucky before he was transferred to his permanent institution in Kentucky before he was transferred to Illinois. He was given this packet of information. The warden's office says in that packet of information was something that told defendant, in fact, you have the right to request a final and speedy trial in the issuing state. Defendant claims that that was never part of his package. He doesn't deny that he received the package or that he signed for the package, but that piece of paper was not in there. Just because the state or the warden's office said it was in there doesn't necessarily mean that it was. I mean, we've all made mistakes. We've all made errors. Your honors have even had to send corrected opinions around or corrected decisions around. It's possible that that piece of paper really was not in there. Was that evidence validly admitted that they testified they'd given in the packet that contained that information? Yes, and they had not the packet that they gave to defendant, obviously, but they had a sample packet, and it had the speedy trial rights form in it. But that still doesn't mean that this one form or this one packet that defendant got actually had the paper in it. Even if he got the packet with the information in it, and even if that speedy trial form was in there, defendant is a layman. And as I'm sure your honors know, a lot of people in the Department of Corrections, they're lucky that they can read at all. A defendant had asked the people at the Rotor Institute, can I talk to a lawyer? They have what's called legal aid there. He was told no unless it's a pressing legal matter. He didn't know. I don't even know what that means, pressing legal matter. So even if he had been aware that he had these rights, he needed an attorney to help him, and he was denied attorney at that point. Even if he, again, had received the information, here's what the language of the statute requires a criminal defendant to be able to understand. Quote, you are hereby further advised that by the provision of said agreement, you have the right to request the appropriate prosecuting officer of the jurisdiction in which any such indictment, information, or complaint is pending, and the appropriate court that a final disposition be made thereof. You shall then be brought to trial within 180 days. My goodness, it takes me a minute to figure all that out. So just because they gave defendant the information, and let's just say that the information that he needed on this was in that packet, that doesn't mean that a normal defendant could understand it. So the question that your Honor has to answer is what is the obligation of the warden under the Interstate Detainer Act? Does he have to confer with the defendant face-to-face to make sure that the defendant understands everything in that packet, or can he just go, here, here's a packet, your rights are in there? Now we're saying that simply giving the defendant a packet of information and saying, here's your rights, take care of it, with especially language like this that's so complicated. That's not sufficient. In order to exercise your rights, you have to understand them, you have to know that you have them, and you have to understand them. So I'm urging that they must be explained to him somehow, at least gone over every form with the defendant. Even though that's not explicitly set out in the statute, we're arguing that the warden should have made sure that all the people under the Interstate Detainer Act understand all of their rights. I am not going to discuss the ineffective assistance of counsel or the jurisdiction problem unless you have a question on that. Okay, thank you. Is it Ms. Darman? Yes. Good morning, Your Honor, counsel. I wanted to point out one thing at the get-go in response to counsel. The defendant did have a caseworker that was assigned to him and I believe his name was Chad Shelby, who sat down with him and went over this paperwork. This was testified to by Tandy Wells, who worked at Rodera, who came for the motion to dismiss hearing in Illinois. She stated a few things. First, that it has always been the policy at Rodera that whenever a detainer is lodged, that the defendant receives this IAD packet. Now, whether or not the information in this packet is clear enough to a layman, I believe it is. I mean, it's People's Exhibit 2 in the record. You'll be able to read it for yourself. It states you have the right to request a final disposition. Moreover, there is a caseworker who is sitting there going over this information for the defendant. Included in that packet is also a sample worksheet for how the defendant can file that request if he chooses to do so. I don't think that it needs to be brought down any further to a common denominator. The information is there. The defendant had a caseworker who sat down and went over the information with him. So as far as those concerns, I think they are met. Tandy Wells testified that when he received the detainer and the form, he would have signed the receipt of the detainer that confirms that he received all that information. Would or wouldn't? He wouldn't? He wouldn't. Oh, wouldn't. And he did, in fact, sign and receive. And People's Exhibit 1 in the record, it's the very last page, you'll see the defendant's signature confirming that he received information. Underneath the defendant's signature is the signature of his caseworker confirming that he was there and gave the defendant that information. So to the extent that the trial court found that the defendant did not receive this information until June at that extradition hearing, the people would argue that the trial court was wrong. He received all the information on January 28th, and considering that the detainer was lodged on January 23rd, that satisfies Article 3C's prompt notification requirement. If, Your Honors, we're to find, as the trial court did, that the defendant did not receive all the information until June at the extradition hearing, dismissal of the charges is still not an appropriate remedy as all the cases on the People's Brief, pages 10 and 11, I won't belabor and go through them all, but dozens of jurisdictions have come to the conclusion that dismissal is never an appropriate remedy. The legislature has not sanctioned it as an appropriate remedy. There are three very specific instances, three specific violations of the IAD where they say dismissal is appropriate. This notification requirement is not one of them. I would just conclude by arguing that the policy behind that makes sense. To penalize an innocent jurisdiction, in this case Illinois, for any negligence on the part of some Kentucky prison, it would result in an injustice. If Your Honors don't have any further questions. No, I don't think so. Thank you. Rebuttal? Just two sentences, I think. Well, great. The caseworker did not testify. So we don't know what he told defendant. We don't know if the caseworker was an attorney that could adequately explain these. And defendant was told, legal aid will help you fill out these papers. Defendant said, can I see them? No, not at this institution unless it's a present legal matter. Thank you. Thanks very much. We'll try to get you a decision at the earliest possible date. Thanks for your arguments this morning.